Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| TRIPLE-S MANAGEMENT, CORP.<br>Recurrido<br><br><br>v.<br><br><br>ROBERTO TORRES; RICARDO PINEDA THEN; Y NEODECK HOLDINGS CORP.<br>Peticionaria | KLCE202400678 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso. Núm. SJ2024CV03325<br><br>Sobre:<br>Injuction Estatutario al amparo de los Artículos 7.01 (D), 7.10 y 7.15 de la Ley General de Corporaciones |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Grana Martínez[1] y el Juez Adames Soto

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Acude ante nosotros NeoDeck Holdings, Corp. (ND Holdings o peticionaria), solicitando la revocación de una *Resolución* emitida por el Tribunal de Primera Instancia, Región Judicial de San Juan, (TPI), el 10 de junio de 2024[2]. En lo pertinente[3], mediante dicho dictamen el foro primario declaró *No Ha Lugar* la *Solicitud de descalificación de la representación legal de los demandantes por conflictos de interés* presentada por ND Holdings, luego de haber aquilatado en una vista la prueba documental y testifical que fue llevada a su atención por las partes. Tal como el título de la moción aludida lo indica, la peticionaria pretendió lograr la descalificación del bufete de abogados Pietrantoni

---

[1] Mediante Orden Administrativa OATA-2024-071 de 26 de junio de 2024 se designó como integrante de Panel a la Hon. Grace M. Grana Martínez debido a la inhibición de la Hon. Waleska I. Aldebol Mora.
[2] Notificada a las partes el mismo día.
[3] En la misma *Resolución* el TPI también denegó otra *Solicitud de descalificación,* pero instada por Triple-S, que no ha sido objeto de revisión, y por ello baste con su mención en esta nota.

Méndez & Álvarez, LLC., (PMA), representantes legales de Triple-S Management Corp., (Triple-S o recurrida), para el presente pleito.

a.

El 13 de abril de 2024, Triple-S presentó una *Demanda enmendada de injunction estatutario al amparo de los artículos 7.01(D), 7.10 y, en la alternativa, 7.15 de la Ley General de Corporaciones,* (*Demanda enmendada*), que dirigió en contra de ND Holdings, y los señores Roberto Torres y Ricardo Pineda, CEO y CTO de la referida compañía, respectivamente. Esgrimidas varias alegaciones contra estos, Triple-S solicitó como remedios al Tribunal lo siguiente: (1) que ordenara la celebración de una reunión anual de accionistas de ND Holdings; (2) que ND Holdings le permitiera el acceso a Triple-S de los libros de la corporación y demás información de la entidad; (3) que fueran removidos los señores Torres y Pineda de los cargos que detentaban ilegalmente.

A raíz de ello, el TPI pautó la celebración de una vista, a ser celebrada el 2 de mayo de 2024, en la cual atendería la solicitud de *injunction* presentada.

En respuesta, el 26 de abril de 2024, ND Holdings presentó las siguientes mociones: *Contestación a Demanda enmendada*; *Moción de desestimación por las alegaciones* y; *Moción de descalificación de la representación legal de los demandantes por conflicto de interés.* Atendiendo lo que aquí concierne, mediante la referida petición de descalificación ND Holdings sostuvo que procedía dicho curso de acción, pues operaba una representación simultánea adversa en contra de PBM, al haber descansado en la representación y el consejo legal que le impartió dicho bufete, cuando en el año 2010 se confeccionó y aprobó el *Shareholders agreement between NeoDeck Holdings, Corp., Triple-S Management Corp., and NeoDeck Software Corp.*, (el *Acuerdo*), cuya interpretación resultaba necesaria para considerar la *Demanda enmendada.* Continuó afirmando ND Holdings, que PBM fue el único

bufete en participar en las negociaciones y posterior redacción que dieron lugar al *Acuerdo*. Afirmó que los abogados de PBM que participaron en la redacción del *Acuerdo* tendrían que ser llamados como testigos para interpretar dicho documento, particularmente el Lcdo. Manuel Rodríguez Boissén, quien tuvo a su cargo la confección e incorporación de ND Holdings, además de intervenir en otros documentos relacionados. En definitiva, ND Holdings planteó un conflicto de interés de PBM, en su vertiente de representación sucesiva adversa, al presuntamente intervenir como su representante legal en todo lo relativo a la aprobación del *Acuerdo*, pero luego servir de representante legal de Triple-S en la *Demanda enmendada* actual. Acompañó a la solicitud de descalificación una declaración jurada suscrita por el señor Pineda.

Requerido por el foro primario para que respondiera a la *Moción de descalificación*, Triple-S presentó escrito en oposición el 2 de mayo de 2024. En este esgrimió, que la referida solicitud de descalificación, además de ser un burdo esfuerzo por entorpecer los procedimientos, no cumplía con los requisitos para establecer la representación sucesiva adversa alegada. En específico, Triple-S sostuvo que, con referencia al proceso que dio lugar al *Acuerdo* en el 2010: las dos corporaciones que negociaron y lograron el acuerdo, Triple-S y ND Software, tuvieron cada una sus propios abogados en dicha negociación, (la Lcda. Ana S. Gueits y el Lcdo. Quique Torres abogados de ND Software, mientras que PBM fue el represente legal de Triple-S); que en tal proceso nunca existió una relación abogado cliente entre PBM y ND Holdings; las funciones de PBM en lograr la incorporación de ND Holdings fueron una labor meramente de carácter nominal; la intervención de PBM en la preparación del *Acuerdo* suscrito en el 2010, no está sustancialmente relacionada con la *Demanda enmendada*. En lo referente a la alegada presunta necesidad de ND Holdings de citar a los abogados de PBM como testigos en el pleito actual, Triple-S sostuvo que, para efectos de los asuntos a ser dilucidados en la *Demanda*

*enmendada,* lo fundamental era determinar la intención de las partes al suscribir el *Acuerdo,* lo que no comportaba la necesidad de citar a los abogados que lo redactaron. El escrito en oposición a la descalificación fue acompañado de varios documentos, dirigidos a sostener lo aducido en la moción.

Así las cosas, y superados varios asuntos procesales, el foro primario decidió celebrar una vista para dirimir la controversia sobre la descalificación solicitada. Celebrada dicha vista[4], el TPI emitió la *Resolución* cuya revocación nos solicita la peticionaria, denegando su petición para descalificar a PBM como abogado de Triple-S en la *Demanda de injunction.* **En la muy fundamentada *Resolución* recurrida**, el tribunal *a quo* enumeró treinta y seis hechos que encontró probados, luego de aquilatar la prueba documental presentada por las partes, **atribuyendo la credibilidad correspondiente a los testimonios desfilados ante sí[5]**. Entonces, al aplicar el derecho pertinente a los hechos probados, el foro recurrido concluyó que: la actuación del licenciado Rodríguez Boissén, abogado de PBM, en los trámites relativos al *Acuerdo* se enmarcó dentro de sus responsabilidades como abogado de Triple-S; cualquier explicación brindada por dicho letrado a ND Holdings se circunscribió a lograr viabilizar el acuerdo alcanzado con su representado-cliente, Triple-S; no hubo relación abogado-cliente entre PBM y ND Holdings; esta última tampoco logró demostrar que las funciones ejercidas por PBM, tendientes a lograr el *Acuerdo* en el 2010, estuvieran sustancialmente relacionadas con los hechos que actualmente se ventilan en la *Demanda enmendada*; de la prueba creída por el TPI no surgió que la función del Lcdo. Rodríguez Boissén en la transacción del *Acuerdo* en el 2010, esté sustancialmente relacionada con la controversia presente*;* no hay controversia sobre la

---

[4] Las incidencias acontecidas en la vista fueron plasmadas en la correspondiente *Minuta* de 6 de junio de 2024. Apéndice del recurso de *certiorari*, págs. 2464-2487.

[5] Según se hizo constancia en la *Minuta* de la vista celebrada, comparecieron como testigos de la parte promovente de la *moción de descalificación,* el Ldo. Rafael Torres, la Lcda. Ana Gueits y el señor Ricardo Pineda Then. Apéndice del recurso de *certiorari*, págs. 2466 a la 2476.

validez del *Acuerdo*, ni tampoco resulta necesario presentar alguna prueba extrínseca para entender el alcance de dicho documento, por lo que la participación de los abogados de PBM como testigos no arrojaría luz sobre tales asuntos.

Inconforme, ND Holdings acude ante nosotros mediante recurso de *certiorari*, alzando dos señalamientos de error:

> *Erró el TPI al no aplicar adecuadamente el estándar del Canon 21, infra, específicamente en cuanto a la existencia de la relación abogado-cliente entre Neodeck Holdings y PMA, y la ausencia de relación sustancial.*

> *Erró el TPI al no permitir el testimonio del Sr. Torres como presidente de Neodeck Holdings por acumulativo y esto fue un factor decisivo en la determinación del TPI de no descalificar a PMA.*

Junto a su petición de *certiorari*, ND Holdings incluyó una *Moción en auxilio de nuestra jurisdicción*, solicitando la paralización de los procesos en el TPI, hasta tanto concluyera nuestra intervención.

En atención a lo anterior, emitimos *Resolución* concediéndole un breve término a Triple-S para que mostrara causa por la cual no deberíamos acoger la solicitud de paralización.

En cumplimiento, Triple-S instó *Oposición a moción en auxilio de jurisdicción*.

b.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction*, 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró*, 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al

tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra, pág. 711. El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra, págs. 711-712; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello,* 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare  LLC,* supra, pág. 730. Además, en su mayor parte, las determinaciones interlocutorias pueden esperar hasta la conclusión final del caso para ser revisadas en apelación, conjuntamente con la sentencia dictada en el pleito. *IG Builders et al. v. BBVAPR,* supra, pág. 336.

c.

La tesis o premisa fundamental desde la cual ND Holdings impulsó su solicitud para descalificar a PBM como representante legal de Triple-S en la *Demanda enmendada,* descansa por completo en las incidencias ocurridas durante el proceso de negociación y *Acuerdo* alcanzado en el año 2010 **entre Triple-S y ND Software**, estando estas representadas por sus respectivos abogados, que dio lugar a la incorporación de ND Holdings. Luego de examinar con detenimiento la *Resolución* recurrida, junto a la *Minuta* de la vista realizada (en la cual se hizo un recuento de la prueba testifical desfilada por DK Holdings para sostener su petición de descalificación, y el contrainterrogatorio a la que fue sometida), y la

prueba documental allí admitida, no encontramos en estas motivo alguno que justifique nuestra intervención con el curso decisorio tomado por el tribunal *a quo* al denegar la solicitud de descalificación instada por DK Holdings.

Según citáramos en la exposición de derecho, el Tribunal Supremo ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC,* supra, pág. 730. Precisamente, juzgamos estar ante una de esas situaciones en que se debe desfavorecer revisar el dictamen interlocutorio recurrido, por lo que solo nos corresponde denegar el recurso de *certiorari* presentado, dando oportunidad a que el proceso ante el TPI continúe sin interrupción.

**Parte dispositiva**

Evaluado el recurso de *certiorari*, hemos decidido *Denegar* su expedición. En consecuencia, declaramos *No Ha Lugar* la solicitud instada por ND Holdings para paralizar los procesos que se siguen ante el Tribunal de Primera Instancia. Por ende, se declara no ha lugar la *Moción de Desestimación* presentada por Triple-S Management Corporation.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones